## MATTER OF NASON

### In Deportation Proceedings

### A–12126968

*Decided by Board September 29, 1967*

Respondent's conviction on a plea of guilty on April 9, 1965 of willfully and knowingly devising a scheme to defraud by use of the mails using a fictitious name from November 1, 1962 to December 31, 1962 in violation of 18 U.S.C. 1341, and his conviction on the same day, in the same court, on his plea of guilty, of devising a similar scheme to defraud by use of the mails using another fictitious name during the period October 2, through October 24, 1963, in violation of the same statute—convictions of two crimes involving moral turpitude—are not convictions arising out of a single scheme of criminal misconduct within the meaning of section 241(a)(4) of the Immigration and Nationality Act.*

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of two crimes after entry—Devising a scheme to defraud by use of the mails (18 U.S.C. 1341); and devising a scheme to defraud by use of the mails (18 U.S.C. 1341).

ON BEHALF OF RESPONDENT:　　　　ON BEHALF OF SERVICE:
　Rita E. Hauser, Esquire　　　　　R. A. Vielhaber
　300 Madison Avenue　　　　　　　Appellate Trial Attorney
　New York, New York 10017

The case comes forward on appeal from the order of the special inquiry officer entered April 12, 1967 ordering that the respondent be deported on the charge contained in the order to show cause.

The case was previously considered by us on June 2, 1966 on appeal from the order of the special inquiry officer dated January 13, 1966 finding the respondent deportable as charged in the order to show cause, concluding that the crimes for which respondent was convicted did not arise out of a single scheme of criminal misconduct and ordering him deported to Canada. In an order of June 2, 1966, after noting the diversity of holdings regarding the meaning of the phrase "not

---

*Reaffirmed. See 394 F. 2d 223 (C.A. 2, 1968).

arising out of a single scheme of criminal misconduct," we found that deportability had been established.

The respondent applied for judicial review, *Nason v. Immigration and Naturalization Service*, 370 F.2d 865 (2d Cir. 1967). The court held that devising a scheme to defraud by use of the mails was a crime involving moral turpitude; that the respondent was not entitled to have a lawyer present at a preliminary interrogation before an investigator of the Immigration and Naturalization Service, and that it was not error to fail to advise him that he had a right to counsel; and that it was not error to receive in evidence at the deportation hearing the respondent's sworn statement made at the preliminary interrogation. However, the court held that the Board's method of appraising the evidence was not a satisfactory application of the rule required in deportation proceedings of clear, unequivocal and convincing evidence as held by the Supreme Court in *Woodby v. Immigration and Naturalization Service*, 384 U.S. 904 (1966); that it was necessary to decide the issues on the record as a whole. On March 28, 1967, we remanded the case for further proceedings in accordance with the opinion of the court.[1]

We will briefly review the facts. The respondent, a native and citizen of Canada, now 31 years old, was admitted to the United States for permanent residence on April 29, 1961. On April 9, 1965 he pleaded guilty to three counts of an information in the District Court for the Southern District of New York for unlawfully, wilfully and knowingly devising a scheme to defraud by use of the mails using the fictitious name of "Charles C. Cole" from November 1, 1962 to December 31, 1962 in violation of 18 U.S.C. 1341. On the same day in the same court he also pleaded guilty to three additional counts of the information for devising a similar scheme in violation of the same section, using the fictitious name "Peter Hughes," during the period from October 2, through October 24, 1963. Upon his plea of guilty to these six counts petitioner was given a suspended sentence and placed on probation for two years. The special inquiry officer, the Board, and the court found that each of these crimes involved fraud and hence moral turpitude within the meaning of 8 U.S.C. 1251(a) (4).

In his order of April 12, 1967 the special inquiry officer compared the respondent's sworn statement of June 15, 1965 with his testimony at the deportation hearing on August 8, 1965 and found that the re-

---

[1] We noted the dissent of Chief Judge Lumbard who found the evidence as to deportability to be clear, unequivocal and convincing, and that no testimony could support the claim that these two felonies, so removed in time, and void of any conceivable continuity, could have arisen out of a "single scheme" as Congress intended that phrase.

spondent's attempted explanation at the deportation hearing was patently lame, and that the respondent was not a credible testifier in his defense, plus the uncontrovertible fact that the frauds were separated by ten months. The special inquiry officer concluded that the evidence was clear, unequivocal and convincing that the crimes for which the respondent was convicted did not arise out of a single scheme of criminal misconduct.

Counsel argues that the evidence relied on by the special inquiry officer is not enough to meet the very rigorous burden of proof put on the Government in deportation proceedings by *Woodby* v. *Immigration and Naturalization Service*, 384 U.S. 904, and that the special inquiry officer erroneously relied on *Costello* v. *Immigration and Naturalization Service*, 311 F.2d 343 (2d Cir., 1962), reversed on other grounds, 376 U.S. 120 (1964). Judge Medina in the *Nason* case referred to the *Costello* case and stated that the court concluded in the *Costello* case that in the absence of any admissible and relevant evidence other than the records of conviction (Costello did not testify), the special inquiry officer was required to find that the petitioner had been convicted of two crimes not arising from a single scheme of misconduct. The court pointed out that in the *Nason* case, by contrast, there was evidence, other than the record of convictions, which was relevant to the issue of how many criminal schemes existed.

In the present case, the explanation of the respondent in deportation proceedings attempting to clarify and to repudiate his statement of June 15, 1965, was a weak and unconvincing attempt to lessen the damaging effects of the statement against respondent's interest contained in Exhibit 4. The special inquiry officer, who had the opportunity to view the demeanor of the respondent when testifying, found him to be not a credible testifier. It is uncontradicted that the frauds were separated by a period of ten or eleven months. In addition, close examination of the records of conviction show that the counts (1), (2) and (3) of the information involved a scheme to defraud under the name of Charles C. Cole; and counts (7), (8) and (9) involved a second scheme to defraud committed some ten or eleven months later under the name of Peter Hughes.[2]

While we have noted the distinction between this case and the *Costello* case, the court in the *Costello* case[3] clearly indicated its disagreement with the views expressed in the cases collected in footnote 8,

---

[2] By contrast, in *Joronimo* v. *Murff*, 157 F.Supp. 808, the period of time charged in the first count encompassed the periods of time of the acts charged in every one of the other counts, and all the acts constituted parts of a common scheme and plan.

[3] 311 F.2d 343 p. 348.

which are the cases relied upon by counsel. The court in the *Costello* case, the same circuit as in the instant case, noted that the statute makes no reference whatever to any "common scheme or plan;" nor would it seem reasonable to suppose that the Congress intended to grant immunity from deportation to those who over a period of time pursued a course of criminal misconduct, involving numerous successive, separate crimes, consummated at different times but in the same manner, or with the same associates, or even by the use of the same fraudulent devices, disguises, tools or weapons. The court stated that there was no denying the fact that the Congress by the 1952 Act intended to make it easier rather than more difficult to deport aliens who were recurrent criminals.

Upon a full consideration of all the evidence of record, including the respondent's sworn statement, his testimony, his attempted repudiation of sworn statement (a statement against interest), the finding of the special inquiry officer that the respondent was not a credible testifier, and the record of conviction showing two separate and distinct mail frauds, committed over ten months apart, constituted clear, unequivocal and convicing evidence that the crimes did not arise out of a single scheme of criminal misconduct. We find that respondent is deportable as charged. The appeal will be dismissed.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.